FILED

02/06/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 22, 2025

## STATE OF TENNESSEE v. BRANDON RASHANN MURRAY

**Appeal from the Circuit Court for Montgomery County**
**No. CC20-CR-201  Robert T. Bateman, Judge**

_____

### No. M2024-00163-CCA-R3-CD

_____

Brandon Rashann Murray, Defendant, admitted to violating the terms of his community corrections sentence. Following a hearing, the trial court ordered Defendant to serve the balance of his eight-year sentence in confinement. Defendant claims that the trial court erred in imposing a sentence of incarceration because his violations were technical in nature. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

William W. Gill (on appeal), Assistant Public Defender—Appellate Division of the Tennessee District Public Defender's Conference; Roger E. Nell, District Public Defender; and Joseph A. Price (at hearing), Assistant District Public Defender, for the appellant, Brandon Rashann Murray.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Robert J. Nash, District Attorney General; and Hailey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Procedural History*

Defendant was indicted on March 3, 2020, for "possession with intent to manufacture, sell or deliver heroin, Schedule II fentanyl"; simple possession of a Schedule VI controlled substance; and evading arrest. On April 8, 2021, Defendant entered a plea of guilty, as a Range I standard offender, to Class B felony possession of heroin with intent

to sell. The State provided a factual basis, stating that when law enforcement apprehended Defendant, he was found in possession of "approximately 7.67 grams" of what the Tennessee Bureau of Investigation confirmed to be "a mixture of heroin and fentanyl." During a post-*Miranda* interview by law enforcement officers, Defendant admitted to selling heroin. Per the plea agreement, the trial court sentenced Defendant to eight years to be served on community corrections and ordered Defendant to attend rehabilitation through the Veteran's Administration. The other two charges were dismissed, and Defendant was awarded jail credit from January 14, 2020, through March 10, 2020.

### Current Revocation Warrant

On August 1, 2022, a document titled "Absconder Affidavit Violation of Community Corrections" was filed. The affidavit alleged, "Defendant has not reported to Community Corrections since being released on 06/21/22. Defendant made several phone attempts; last contact was on 7/15/22. Defendant's whereabouts are unknown, and he is considered to be an Absconder." Based on the affidavit, the trial court issued an "Absconder Warrant" for Defendant. Defendant was arrested on August 14, 2022, and remained in jail until the court held a revocation hearing.

### Revocation Hearing

The revocation hearing on the Absconder Warrant was held on November 21, 2022. Defense counsel stated that Defendant had been conditionally accepted to Heartland Adult & Teen Challenge ("Heartland"), an inpatient treatment facility in Clarksville, but that there was a "hold" on Defendant out of Christian County, Kentucky. Counsel announced that an agreement had been reached with the State whereby Defendant would admit to the community corrections violation and then be released on a recognizance bond so that Kentucky law enforcement officers could take him back to deal with his criminal case there. Counsel stated that a "capias will be issued from this [c]ourt to bring [Defendant] back once he's finished with Kentucky, and then we can deal with the inpatient portion." The State asked the court to set a date for a status hearing and added that, when Defendant was brought back, "[W]e will look at a one-year inpatient rehab furlough."

After Defendant admitted to the violation, the trial court found that Defendant had violated the terms of community corrections. The court allowed Defendant to be released on his own recognizance with a $10,000 bond signed by Defendant. The court reset the case for a status hearing on December 5, 2022. The court then added, "The odds are that you won't be back here on December 5th, and a capias will issue. Meaning that[,] when you take care of your business [in] Christian County, there will be a hold on you to bring you back here."

The record on appeal does not include documents showing what, if anything, occurred on December 5, 2022, nor does it contain the capias issued for Defendant's arrest. Based on jail credits, Defendant was apprehended on October 5, 2023, and remained in jail until the sentencing hearing.

### Sentencing Hearing

On January 4, 2024, the trial court held a sentencing hearing on the previously admitted violation of community corrections stated in the affidavit to the August 1, 2022 Absconder Warrant. The State called Kodey Driskell, a case officer with Montgomery County Community Corrections. Officer Driskell said that Officer Anita Raveling, who prepared Defendant's case file, had "some pretty severe medical issues going on right now" and could not be present. Officer Driskell testified that he had reviewed a statement that Officer Raveling had prepared for the hearing and that he was there as the "keeper of the records." Defense counsel interjected, stating that Defendant "has already admitted that he violated the terms of his probation, we're just here for sentencing." The trial court treated counsel's statement as an objection pursuant to Tennessee Rule of Evidence 402, ruling that "[t]he history of his compliance or lack of compliance with supervision . . . is relevant in determining whether he is placed back on supervision or ordered to serve his sentence, so your objection is overruled."

Officer Driskell testified that Defendant first reported to community corrections on April 13, 2021, and that he failed a drug screen for tetrahydrocannabinol ("THC") on that date. Officer Driskell said that Defendant failed to report after the initial visit and that an absconder warrant was issued on June 3, 2021. At a May 4, 2022 revocation hearing, Defendant admitted to the violation. The trial court ordered Defendant to be reinstated to community corrections after completing 120 days' incarceration. Defendant was released from jail on June 21, 2022. Defendant reported once on June 29, 2022, but never reported again. The second absconder warrant was issued on August 1, 2022, and Defendant was apprehended on August 14, 2022. Officer Driskell opined that Defendant was not a good candidate for alternative sentencing.

Defendant testified about his initial meeting with Officer Raveling. The following dialogue from his testimony on direct examination concerns drug testing:

Q. Yes. When you met with them, the representative made a comment that you tested positive for THC?

A. Never failed a drug screen.

Q. Okay. Were you using THC or controlled substances back in April of 2021?

A. I never failed a drug screen.

Q. Okay. Do you remember ever signing any type of consent, any form, indicating that you agreed with any test or anything?

A. No, sir. I passed the initial drug-screening and the second one on the days I reported. And if I would have failed one, they would have told me the first day.

Defendant also claimed that an "absconder warrant wasn't filed, it was sent out" and that "[i]t was not an absconder warrant, it was a failure to report warrant." As an explanation for why he did not report after he was initially placed on community corrections, Defendant testified that "honestly speaking, I didn't show up. I was scared. I thought I was going to get in trouble for driving on a suspended license."

Defendant testified that he called Officer Raveling and his probation officer in Kentucky when he got out of jail on June 21, 2022. According to Defendant, after he pled to the violation in the second absconder warrant, he went to Kentucky to resolve a probation matter there. He was released from jail in Kentucky in late January or early February after serving three months. He thought Tennessee had a hold on him and that he would be extradited to Tennessee, but "when they let me out, straight out, I was just like, wow." Defendant claimed that, upon release in Kentucky, he went straight to Heartland for a few days. He said "his religion hindered" him at Heartland because they wanted him "to do things" that were not consistent with his religion and his beliefs as a Muslim. After Heartland, he said that he tried other Christian-based facilities "a couple of times" but that there were "other things going on, so I left." He said that he went to Islamville in Dover where he "was around people of [his] religion, and they helped [him] get clean." He said that the people at Islamville were "the ones that got me rocketed to this apprentice, electrician apprenticeship. And I stayed out of trouble[,] and I worked my butt off." Defendant said that he stayed in Islamville for four months.

As an explanation for why he did not contact Officer Raveling when released from jail in Kentucky, Defendant stated, "Honestly, when I got released and I went through the whole debacle of, with the rehabs and everything, I didn't want to come back to jail. That . . . being in jail and being incarcerated is messing with my mind a lot." Defendant admitted that he "lost some contact" with Officer Raveling and that he "ended up relapsing and

- 4 -

started using." Defendant claimed that the August 1, 2022 absconder warrant was "the first absconder warrant that they filed."

Defendant said that, if he were to be reinstated, he would live with his aunt in Clarksville. He said that he had previously been working as an electrician's helper and thought he would still have a job if he was reinstated. Defendant said that he served in the Army from 2009 until 2015 and that he suffers from post-traumatic stress disorder and bipolar depression.

On cross-examination, Defendant was asked whether he "failed to report for [his] STRONG-R assessment with [Officer] Raveling" on June 28, 2021. Defendant said that he remembered reporting on June 28 because that was the day he was charged with driving on a revoked license.

Following argument, the trial court made oral findings on the record. The court found that "[a]pproximately three months" after being released on community corrections, the first violation of community corrections was issued alleging that Defendant "had failed to report and was an absconder." Defendant admitted to that violation, was ordered to serve 120 days, and was then reinstated to community corrections supervision. On August 1, 2022, "three months later, the second absconder warrant was filed because, again, this Defendant had failed to report." Defendant admitted that he violated the terms of his community corrections supervision. Defendant was granted a recognizance bond so that he could address his issues in Kentucky and never returned until he was apprehended on the outstanding capias. The court noted, "Twice [Defendant] has been offered this opportunity, twice he has absconded and failed to report." The court found that Defendant was not an appropriate person for supervision in the community.

The trial court determined by a preponderance of the evidence that Defendant's supervision on community corrections should be terminated and ordered Defendant to serve the balance of his sentence in the Tennessee Department of Correction ("TDOC"). The judgment fully revoking community corrections reflected that Defendant was entitled to 441 days jail credit and 131 days community corrections credit, for total credits of 572 days.

Defendant timely filed a notice of appeal.

***Analysis***

Defendant claims that the trial court erred by fully revoking his alternative sentence "based solely on the finding that he violated the terms of release by failing to report after

accruing a similar violation in the past." The State argues that the trial court did not abuse its discretion by fully revoking Defendant's community corrections and ordering the balance of his sentence to be served in confinement. We agree with the State.

### Standard of Review

Revocations of community corrections, like revocations of probation, generally involve a two-step process requiring separate exercises of discretion. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). The first step is for the trial court to determine whether to revoke community corrections. *Id*. In this case, Defendant admitted to violating the terms of his community correction sentence, and the court properly revoked Defendant's community corrections. The second step requires the court to determine the appropriate consequence upon revocation. *Id.* When, after revoking community corrections, the trial court places "sufficient findings and the reasons" for the consequences imposed by the court on the record, we review the trial court's decision for abuse of discretion with a presumption of reasonableness. *Id*. at 759.

Defendant argues that "the trial court failed to recognize the legal distinction between failure to report, which is a technical violation with punishments limited by statute, and abscondsion, which is a non-technical violation that may result in full revocation even without prior violations." The Sentencing Order/Behavioral Condition of Release for Defendant's community corrections sentence makes no distinction between what is commonly referred to as a "technical" violation versus a "non-technical" violation. *See State v. Griffis*, No. 03C01-9708-CR-00358, 1998 WL 712702, at *2 (Tenn. Crim. App. Oct. 13, 1998) (affirming violation where the behavioral contract setting forth the conditions of community corrections sentences makes no distinction between a "technical" violation versus a "non-technical" violation). "While a revocation of probation and a revocation of community corrections are similar, a trial court examining a revocation of community corrections is not bound to the same maximum sentence mandates as technical violations of probation under Tennessee Code Annotated section 40-35-311." *State v. Milton*, No. W2023-00341-CCA-R3-CD, 2023 WL 6878621, at *2 (Tenn. Crim. App. Oct. 18, 2023), *perm. app. denied* (Tenn. Jan. 12, 2024). Under a community corrections sentence, "a violation irrespective of its nature remains a violation." *Griffis*, 1998 WL 712702, at *2.

When a trial court sentences an eligible defendant to community corrections, the court may "set the duration of the sentence for the offense committed at any period of time up to the maximum sentence within the appropriate sentence range and shall retain the authority to alter or amend at any time the length, terms or conditions of the sentence imposed." Tenn. Code Ann. § 40-36-106(e)(2). The court has the "power to revoke the

sentence imposed at any time due to the conduct of the defendant[.]" Tenn. Code Ann. §
40-36-106(e)(4).  If the court revokes community corrections, the court has the authority
to order the defendant to serve the remainder of the original sentence in confinement. *State
v. Patty*, 922 S.W.2d 102, 104 (Tenn. 1995).  At the sentencing hearing, the trial court
placed on the record sufficient findings supporting its decision to order Defendant to serve
the remaining balance of the sentence in TDOC.

### *Conclusion*

We conclude that the trial court acted within its discretion in its sentencing decision
and affirm the judgment of the trial court.


s/*Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE